
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2017

## STATE OF TENNESSEE v. KELLY RENEA DUBOIS

**Appeal from the Circuit Court for Bedford County**
**No. 18176 & 18179     F. Lee Russell, Judge**

_____

### No. M2016-00923-CCA-R3-CD

_____

In 2015, the Defendant, Kelly Renea Dubois, pleaded guilty to one count of theft of property, with the value of the property to be determined by the trial court, and to three counts of forgery, with the trial court to determine the length and manner of her sentence. At sentencing, the trial court ordered the Defendant to serve an effective sentence of nine years and six months in the Tennessee Department of Correction. On appeal, the Defendant contends that the trial court improperly sentenced her for a Class C felony theft because there was insufficient evidence to support the value determined, and that the trial court erred when it denied her request for an alternative sentence. After a thorough review of the record and applicable authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Donna Orr Hargrove, District Public Defender; Andrew Jackson Dearing, III and Michael J. Collins, Assistant District Public Defenders, Shelbyville, Tennessee, for the appellant, Kelly Renea Dubois.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Robert J. Carter, District Attorney General; Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts and Procedural History

This case arises from the Defendant's arrests for theft and forgery in case nos.

18176 and 18179, which were consolidated on appeal. The Defendant entered "open" guilty pleas to three counts of forgery in case no. 18179, and the State recited the following factual basis in support of the plea:

The victim in [case no. 18179] is Ms. Carol McCord. She lived [in Shelbyville], however she has been on an extended stay in the hospital. She . . . had granted power of attorney to a couple of ladies. One of those ladies came to the police department when she saw some checks had been written on the account, and she obviously knew she had not written the checks . . . and [the checks] purported to have [the victim's] signature on [them], and [the victim] was in the hospital, and in no way could have written them. The investigation revealed that the [D]efendant had passed these three checks; two at the Marathon Market in Unionville; and one at the Two Way Market, for various amounts.

The [D]efendant was interviewed and admitted to doing that. She claimed that she did it under the duress of another person.

In case no. 18176, the Defendant entered an "open" plea to theft of property, with the trial court to determine the value of the theft, and the State recited the following factual basis for the plea:

[T]he facts are that the [D]efendant was an employee at Brad's Market and Deli, here in Shelbyville. The owner of [Brad's] began noticing that his deposits seemed to be less and less and less. He then audited his books, comparing the amount of the deposit to the store receipts for a given day, and noticed that there were discrepancies over a period of time that added up to almost $11,000. I believe his estimate was $10,940. And that actually didn't include some other thefts that he believed [had] occurred.

He has a store surveillance system. He looked at that, and it showed that on occasion the [D]efendant, while working, would take money from the store. . . . [A]pparently [the Defendant] would go in after hours, turn off the store alarm, and go into the office, where the deposit bag was and would take money from it.

The trial court questioned the Defendant as to whether she agreed with the State's summary, to which she replied that she did, however, she disputed the amount of money stolen. The trial court announced that, by agreement of the parties, the issue of the value of the theft was reserved for determination by the trial court. The trial court noted that

the Defendant had waived her right to have that determination made by a jury and thus it would make the factual determination before the sentencing hearing.  Following the entry of the Defendant's guilty pleas, the trial court held a hearing during which the following evidence was presented:  Dudley Braden Jones testified that he owned Brad's Market and Deli where the Defendant had previously worked.  At some point during her employment, Mr. Jones noticed that money was missing and that his deposits were "short" of his earnings on a daily basis.  Mr. Jones saw a trend that each day he was missing money in varying amounts.  A spreadsheet of the business's daily financial activity was introduced into evidence.  On the days when Mr. Jones noticed that he was missing money, he went back and checked surveillance video, which showed the Defendant coming to his store at times between midnight and 2 a.m. and getting money out of the office.

Mr. Jones was asked to explain the spreadsheet of his daily earnings, and he identified a line where his total revenue was listed, which, he explained, should have matched the daily figures for deposits, checks, cash, credit cards, and EBT, added together.  On the days when Mr. Jones was "really short," meaning his total was more than his deposits and other figures added together, Mr. Jones checked to see if the Defendant had worked or come into the store that day.  He agreed that on the days the Defendant was in the store, he was "short" almost every one of those days in large amounts, up to $829.31 on one particular day.  Mr. Jones agreed that his business insurance did refund some of the lost money.

Once Mr. Jones discovered that the Defendant had stolen money from his business he had a conversation with her and showed her the surveillance videos.  Mr. Jones was "trying to be a nice guy" and came to an agreement with the Defendant that she would work some overtime for free to pay back some of the stolen funds in order to avoid involving the police.

On cross-examination, Mr. Jones agreed that several other employees worked during the Defendant's shifts and that all the employees had access to the store's cash register.  He agreed that the Defendant admitted to taking "around $500."

On redirect-examination, Mr. Jones stated that the surveillance video did not show other employees coming into the store after hours.

The Defendant testified that she worked the first shift at Brad's Market and Deli and that it varied how many employees were in the store on a given day during her shift.  The cash was in the register when the Defendant began her shift each day.  The Defendant agreed that Mr. Jones approached her about money that was missing and she admitted to stealing $500.  She testified that she kept track of how much money she stole.

3

On cross-examination, the Defendant said she took "$20 here $20 there," but she did not keep a written record of what she stole. She maintained that she only stole $500. The Defendant agreed that she had two prior convictions for theft of property valued at over $10,000.

At the conclusion of the hearing, the trial court, addressing the issue of the value of the property stolen, made the following statement:

> Well, we have a swearing contest . . . here. So, let's look at a few things. We have one witness [Mr. Jones] who has extensive documentation and one [the Defendant] who says she kept up with [the amount stolen] but has [no] documentation. As far as another employee [committing the crime], we have cameras showing that only one person was there at odd times, not those other employees. That's certainly suggestive. And then we have the . . . past history of not only thefts but large thefts over $10,000.
>
> So, respectfully, I find that the State has proven beyond a reasonable doubt that the more likely figure is $10,251.

Regarding sentencing, the trial court announced that it would impose mandatory consecutive sentencing for the two cases, because the Defendant was out on bond in case no. 18176 when she committed the forgeries in case no. 18179. The trial court went on to say that it was considering the terms of the Sentencing Reform Act when sentencing the Defendant. The trial court stated that the theft conviction in case no. 18176 was a Class C felony with a sentencing range of six to ten years. It stated that the three forgery convictions in case no. 18179 were Class E felonies and that, as a Range II offender, the Defendant's sentencing range with respect to the forgery convictions was two to four years. The trial court stated that it was "starting with" a presumption in favor of the minimum sentence in both cases, six years and two years, respectively. In consideration of enhancement factors, the trial court stated that the Defendant's prior theft convictions from 2008 were being used to establish her sentencing range and therefore could not be used as enhancement factors. The trial court found that the Defendant had an otherwise "extensive past criminal record."

The trial court focused on enhancement factor (8), that "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community[.]" T.C.A. § 40-35-114(8). The trial court identified several "revocations" of probation or other alternative sentencing from the Defendant's past and stated that this factor was "very significant." The trial court also identified enhancement factor (14), that "[t]he defendant abused a position of public or private trust, or used a

4

professional license in a manner that significantly facilitated the commission or the fulfillment of the offense[,]" which it noted was applicable to the theft conviction. On this basis, the trial court stated that it would enhance the Defendant's sentences for theft from six to seven years and for the forgery convictions from two to three years.

In regards to mitigating factors, the trial court applied factor (1), that "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury[,]" but did not give the factor great weight "at all" because that was the nature of theft. Turning to factor (13), the trial court applied as a mitigating factor the fact that the Defendant had elected to plead guilty rather than go to trial, and as such the trial court elected to reduce each sentence by six months. T.C.A. § 40-35-113(1), (13).

As for consecutive sentencing, the trial court noted that it was mandatory for the theft conviction to run consecutively to the forgery convictions because the Defendant was on bond for the forgery convictions when she committed the theft. The trial court determined that the three forgery convictions would be served concurrently to one another. On the subject of alternative sentencing, the trial court stated that the Defendant was a "very poor candidate for many reasons" and that ordering alternative sentencing would depreciate the seriousness of the Defendant's crimes. The trial court stated that the Defendant was a risk to reoffend if not incarcerated, given how many convictions the Defendant had and the number of times she had violated the terms of her release into public life.

It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred in its factual determination as to the amount of money stolen and thus that she was improperly convicted for a Class C felony. She contends that there was insufficient evidence to prove that she had stolen more than $10,000, but only $500, and thus her conviction should be amended to reflect a conviction for theft of property valued at $500. She further contends that the trial court erred when it denied her request for alternative sentencing because it would have been "in the best interest of all concerned to allow probation" for the Defendant because it would allow her to work and pay her outstanding debt. The Defendant claims that she is eligible for Community Corrections because she is in need of job training and help with her addiction. The State responds that the trial court made a factual determination beyond a reasonable doubt that the value of the theft was greater than $10,000 and thus properly convicted the Defendant for a Class C felony. The State further responds that the Defendant has failed to carry her burden that she is entitled to be sentenced to probation or Community Corrections.

## A. Sufficiency of Evidence for Class C Theft Conviction

The Defendant claims that she was improperly convicted for a Class C felony because the value of the property stolen was not sufficiently proven beyond a reasonable doubt to be more than $10,000.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *See also Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a

defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The trial court considered the evidence and weighed each witnesses' testimony and determined beyond a reasonable doubt that the State had proven that the Defendant had stolen an amount of money exceeding $10,000, a Class C felony. The evidence presented at the sentencing hearing was Mr. Jones's testimony that he had reviewed video surveillance recordings and the Defendant's employment record, as well as his own business financial statements, and had calculated the amount he was "short" on each day that the Defendant worked and added the total of those values which was $10,940. Mr. Jones provided documentation of his calculations. The Defendant testified that she had only stolen $500 in twenty-dollar increments "here and there" but did not keep track of what she had stolen and could not provide documentation. We conclude that the evidence is sufficient to support the trial court's conclusion that the element of value was proven beyond a reasonable doubt.

## B. Alternative Sentence

The Defendant next contends that the trial court erred when it denied her request for an alternative sentence.

Appellate review of sentences is under the abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*.; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). In the context of sentencing, as long as the trial court places the sentence within the appropriate range and properly applies the purposes and principles of the Sentencing Act, this Court must presume the sentence to be reasonable. *Bise*, at 704-07. As the *Bise* Court stated, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 708. We are also to recognize that the defendant bears "the burden of showing that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166,

169 (Tenn. 1991).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders, "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6) (2014). Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing. *Id.* Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. *Id.*

Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103 (2014).

In this case, the trial court properly considered the principles of sentencing and the relevant sentencing factors. The trial court concluded that less restrictive measures than confinement had frequently or recently been afforded to the Defendant and that she had

not successfully abided by the rules of those less restrictive measures. The trial court also found that incarceration was necessary to avoid depreciating the seriousness of the offenses and to provide a necessary deterrent in consideration of the Defendant's past theft and fraud crimes.

In sentencing matters we are to afford the trial court a presumption of reasonableness. In so doing, we cannot conclude in this case that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances. Accordingly, the trial court did not abuse its discretion when it sentenced the Defendant and she is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE